**Glenn PANNELL, Plaintiff,**

v.

**WANKE PANEL CO., dba Wanke Cascade Co., and Warehousemen's Union Local No. 206, Defendants.**

**Civ. No. 84–651.**

United States District Court,
D. of Oregon.

Jan. 9, 1985.

---

Richard Baldwin, Baldwin & Brischetto, Portland, Or., for plaintiff.

Carrell Bradley, Schwenn, Bradley, Batchelor & Brisbee, Hillsboro, Or., for defendant Wanke Panel Co.

Paul Hays, Carney, Buehley & Kasameyer, Portland, Or., for defendant Warehousemen's Union No. 206.

## ORDER

FRYE, District Judge.

Plaintiff, Glenn Pannell, brought this action in Multnomah County Circuit Court against defendant, Wanke Panel Co. (Wanke). The complaint states that Pannell suffers from diabetes mellitus and hyperactive thyroid. Pannell alleges that Wanke discharged him because of his disability in violation of state law, failed to make reasonable accommodation before discharging him, and wrongfully discharged him for a socially undesirable motive. The action was removed to U.S. District Court upon petition of the defendants.

In the matter before the court Wanke moves for summary judgment in its favor on the grounds that no genuine issue of material fact exists and Wanke is entitled to prevail as a matter of law pursuant to Fed.R.Civ.P. 56.

## UNDISPUTED FACTS

Pannell worked for Wanke from April 1976 to January 27, 1984. Pannell was first diagnosed as diabetic in 1976 and as hyperthyroid in 1974. Ken Jacobs, Wanke's warehouse supervisor, had known of Pannell's diabetic condition since 1979 or 1980, and of the hyperthyroid condition for about a year prior to Wanke's being discharged. Brian Radditz, Wanke's company president, had known of Pannell's condition for three or four years prior to Wanke's being discharged.

Pannell worked as a warehouseperson for Wanke. Pannell's duties were to take orders from the shipping office, pull the ordered merchandise from the store inventory in the warehouse, label it properly, deliver the order to the shipping office for appropriate distribution and occasionally to load merchandise on a truck. Different types of heavy equipment were used in his position including forklift, open moving belts, carpet rolling machine, rolling table saws to cut linoleum, a formica saw. This equipment contains sharp blades and saws and is potentially dangerous if not handled properly. At one point, Pannell worked as a shipping clerk, an inside job which did not require him to operate heavy machinery, but he found the position too stressful and was moved back into the warehouse at his own request.

Beginning in March, 1983, Pannell suffered the first in a series of hypoglycemic reactions in the warehouse. During these seizures, which came without warning, Pannell would be beyond his own physical control and beyond the ability of others to control him.[1] Pannell had three of these seizures in 1983 and one in January, 1984. After the January episode, Jacobs requested and received a release from Pannell so that he could review Pannell's medical records. Jacobs met with Wanke's physi-

---

1. Pannell remembers little of the incidents; however, Jacobs testified that Pannell would act violently uncontrollable requiring physical restraint.

cian who felt that Pannell's condition was controllable.

On January 27, 1984, three days after the last hypoglycemic episode, Pannell and Jacobs had a disagreement over Pannell's request to leave work early for a doctor's appointment. The parties descriptions of the incident differ. Wanke issued a letter of termination to Pannell on January 27, 1984, indicating that he was fired but that the decision was subject to reconsideration if Pannell could provide medical facts that clearly state his ability to perform normal duties as a warehouseperson. The discharge was reviewed by Wanke, but Pannell was not reinstated.

## ANALYSIS AND DISCUSSION

Pannell contends that he was wrongfully and discriminately discharged because of his physical handicap. Wanke contends that Pannell's discharge was not a result of discrimination because of his handicap but the result of events which occurred on the job which made it impossible for Wanke to retain Pannell as an employee. Wanke contends that because of a series of uncontrollable diabetic reactions, Pannell was not able to perform the duties of his employment safely and efficiently, without risk of harm to himself, his co-workers and the general public. Wanke asserts that Pannell's duties as a warehouseperson require him to operate and to function in proximity to a good deal of potentially dangerous equipment. Wanke asserts that the structure and configuration of the warehouse area itself, with its power tools and equipment, large stored rolls of linoleum, unprotected loading dock and its sample loft presents a significant safety hazard to Pannell. Wanke asserts that no further reasonable accommodation can be made to negate the danger.

Pannell contends that his hyperthyroid condition was temporary in nature; that the resulting hypoglycemic reactions were manageable; and that Wanke did not implement an effective plan to manage the reactions. Pannell asserts that Wanke rejected assurances from Pannell and Dr. Andrews that he was doing his best to control his condition, failed to make reasonable accommodation to assist Pannell in controlling his condition; and pressured Pannell concerning his reactions at work.

Oregon law protects a handicapped person from discrimination by an employer because of a physical impairment which, with reasonable accommodation, does not prevent the performance of the person's work. ORS 659.425 (1) provides:

"For the purpose of ORS 659.400 to 659.435, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

(a) an individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved."

In order to be able to perform work, a handicapped individual must possess the ability to perform the job safely and efficiently with reasonable accommodation and without present risk of probable incapacitation OAR 839–06–225. An employer may discharge a handicapped employee because of the defect only where there is a probability either that the employee cannot do the job satisfactorily or that the employee can do the job only at the risk of incapacitating himself. *Montgomery Ward v. Bureau of Labor*, 280 Or. 163, 168, 570, P.2d 76 (1977).

The dispositive issue in this action is Pannell's ability to perform his work safely, that is, whether Pannell was a danger to himself or whether he enhanced the risk of injury to others on the job. In order to prevail in this motion, Wanke must show that there is no genuine issue of fact remaining as to Pannell's inability to perform his job duties without danger to himself and/or his co-workers.

## CONCLUSION AND RULING

Regardless of whether Pannell's condition was controllable, the court finds that his condition was not under control in the period at issue here. Wanke made several efforts to accommodate Pannell's condition including transfering him to a less hazardous workplace, and modifying his warehouse position to not require him to operate a forklift, and attempting to accommodate Wanke's eating requirements. The court finds that Wanke made reasonable accommodations.

Wanke was aware of Pannell's handicap well before the episodes of uncontrollable behavior became a problem. The court finds that Pannell was not discharged in response to his disability but in response to the uncontrollable behavior that resulted. Wanke had a reasonable basis to conclude that Pannell could not perform his job duties without probability of harm to himself and to others.

Defendant Wanke's motion for summary judgment is GRANTED.